# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-13-02249-001-TUC-JGZ (BPV) |
| Plaintiff, | **ORDER** |
| v. | |
| Daniel Anthony March, | |
| Defendant. | |

On March 12, 2014, Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation (R&R) (Doc. 25) recommending that Defendant's Motion to Suppress (Doc. 15) be denied. The R&R provided that any party could file written objections within fourteen (14) days after being served with a copy of the R&R. On March 24, 2014, Defendant filed Objections to the R&R, and the Government filed a Response.[1] (Docs. 26 and 29.) The Court has reviewed the Motion to Suppress (Doc. 15), the Government's Response (Doc. 19), the R&R (Doc. 25), Defendant's objections to the R&R (Doc. 26), the Government's Response to the Objections (Doc. 29), and the transcript of and exhibits presented at the Motion to Suppress hearing held before the magistrate judge on February 25, 2014. (Doc. 33.) For the reasons stated herein, the Court adopts the R&R, as amended by this Order.

## STANDARD OF REVIEW

The standard of review applied to a magistrate judge's R&R is dependent upon

---

[1] Trial in this matter is presently set for July 29, 2014.

1 whether a party files objections, and the Court need not review portions of a report to
2 which a party does not object. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). However, the
3 Court must "determine de novo any part of the magistrate judge's disposition that has
4 been properly objected to. The district judge may accept, reject, or modify the
5 recommended disposition; receive further evidence; or return the matter to the magistrate
6 judge with instruction." Fed.R.Civ.P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A
7 judge of the court shall make a de novo determination of those portions of the report or
8 specified proposed findings or recommendations to which objection is made.").

## FACTUAL BACKGROUND

With one exception, the factual background contained in the R&R is uncontested. Defendant states the R&R incorrectly finds that he "did not know the make of his vehicle." (Doc. 26, p. 3, lns 7-13.) A review of evidence presented at the suppression hearing shows that Defendant incorrectly told the agent that the Nissan Altima he was driving was made in 1994, when in fact it was made in 1997. (TR 17: 10-15.)[2] As such, the R&R's factual background is amended as to this fact only and the factual background is otherwise adopted herein by reference.

## LEGAL ANALYSIS

The narrow issue before this Court is whether the referral of the Defendant to secondary inspection at the permanent U.S. Border Patrol Checkpoint on State Route 90 near Whetstone, Arizona, complied with the Fourth Amendment.[3] Defendant asserts that he was impermissibly referred to secondary inspection "primarily because he exercised his constitutional rights when he said 'no' to the agent's request for consent to search his vehicle" and that "no other factors justif[ied] the detention and referral." (Doc. 26, p. 2, lns. 10-13; lns 22-23.)

---

[2] TR refers to the transcript from the February 25, 2014 Motion to Suppress hearing.

[3] Defendant does not contest the constitutionality of the checkpoint itself and conceded at oral argument that he does not challenge the qualifications of the certified canine or the search of his vehicle after the canine alert. (TR 16: 20-25; TR 37:1-2.)

1       The record is silent as to Agent Nanez's purpose in referring Defendant to secondary -- whether it was to investigate immigration offenses or to investigate other criminal activity. The government asserts the referral met an "articulable suspicion" and "minimal showing of suspicion test." (Doc. 29, p. 2, lns. 10-14, 20-23.) In evaluating the existence of reasonable suspicion, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citations omitted). The Court recognizes that in making an articulable suspicion determination, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (citations omitted).

      After an independent review of the record, this Court concludes that, under the totality of the circumstances, Agent Nanez had ample suspicion to refer Defendant to the secondary inspection area. Agent Nanez testified that he sent Defendant to secondary inspection because: (1) from the start, Defendant was stiff in his seat and would not make eye contact with Agent Nanez; (2) Defendant appeared nervous; (3) he incorrectly stated the year of the vehicle he claimed to own – causing Agent Nanez to suspect Defendant was not the owner of the vehicle; (4) Defendant provided an Arizona identification card when asked to provide a driver's license; and (5) Defendant's demeanor suddenly changed when Agent Nanez requested consent to search the vehicle's trunk - that is Defendant made eye contact with Agent Nanez for the first time and spoke in a firm voice. (TR 7:23-10:11; TR 21: 15-20.)

      The Court further finds that Agent Nanez did not refer Defendant to secondary because Defendant refused to allow Agent Nanez to look in his trunk. Agent Nanez credibly testified that Defendant's refusal to consent was not the basis for his decision. On cross-examination, Agent Nanez was asked: "So . . . when you asked him for consent to look in the trunk and he turned to you, looked you in the eye and said in a firm voice

1 "'No', that's when you made the decision to send it to secondary?" (TR 22:8-11.) Agent
2 Nanez responded: "No, I already made the decision just based on his nervous behavior in
3 the beginning, but all that other stuff just added more to that." (TR 22:12-14.)
4 According to Agent Nanez, the most important factors that led him to refer the vehicle
5 "[p]retty much right off the bat [was] when he would not make eye contact with me."[4]
6 Moreover, Agent Nanez explained that he "didn't believe [Defendant] when he said the
7 year of the vehicle. . . . So I didn't believe the vehicle was his. I think he also was
8 dishonest, and it was not his vehicle." (TR 20: 12-17; TR 22:12-14.)[5] Although Agent
9 Nanez acknowledged that he found it suspicious that Defendant "finally was able to look
10 at [him]" when he asked if he could look in the trunk, and answered "no" in a firm voice,
11 Agent Nanez testified that he had decided to send Defendant to secondary prior to
12 Defendant's refusal. (TR 21:12-22:14.)[6]

---

[4] Even if Agent Nanez had considered Defendant's "no" as a factor, the Court finds that this factor would not have tainted the remaining factors proffered by the government, which this Court finds sufficiently establish "articulable suspicion." *See United States v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991) (increased nervousness constituted the "minimum showing of suspicion" necessary to briefly delay a car for a dog sniff at a stationary immigration checkpoint); *see also United States v. Riley*, 927 F.2d 1045, 1050 (8th Cir. 1991) ("a sharp change in attitude from being compliant and agreeable at the outset of his encounter with the detectives to becoming nervous and guarded when they pressed for permission to search his checked suitcase" provided grounds for reasonable suspicion).

[5] Defendant claims that his mistaken statement regarding the year of his vehicle is of no significance: "The defendant's mistake that the vehicle was approximately 16 years old, rather than approximately 19 years old, demonstrates nothing." (Doc. 26, p 3.) The mistake did, however, have significance to the officer who, based on his training and experience, concluded that the vehicle was not really Defendant's. *See Arvizu,* 534 U.S. at 273 (officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" ).

[6] Throughout his filings and at the evidentiary hearing, Defendant repeatedly stated that his United States citizenship had already been established at primary inspection, thereby suggesting that there was no legitimate basis for his referral to secondary. Defendant's argument is not persuasive. Defendant's claim to citizenship does not demonstrate that the agent's referral was pretextual and not for immigration purposes. Neither Defendant's "anglo" appearance nor his presentation of an Arizona Identification card is evidence of citizenship. Moreover, even if Defendant is a United States citizen, it would not preclude his referral for secondary inspection for immigration purposes. *See United States v. Wilson*, 7 F.3d 828, 833 (9th Cir. 1993) (a failure to ascertain citizenship would have been irrelevant to the valid immigration purpose of

**CONCLUSION**

After an independent review of the record,

**IT IS HEREBY ORDERED** that:

1. The Report and Recommendation (Doc. 25) is **ACCEPTED AND ADOPTED** as the findings of fact and conclusions of this Court, as amended in this Order;

2. Defendant's Motion to Suppress (Doc. 15) is **DENIED**; and

3. This matter remains set for trial on July 29, 2014.

Dated this 9th day of June, 2014.

_____
Jennifer G. Zipps
United States District Judge

---

investigating alien smuggling). The Court further notes that, in this case, there is no suggestion that the immediate use of a canine at secondary inspection would provide evidence of pretext; the certified canine in this case was trained to detect concealed persons as well as drugs. (Doc. 19-3, Exh. 3, U.S.C.B.P. Canine Detection Team Certification).